UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNEESSEE
WINCHESTER DIVISION

IN THE MATTER OF THE              )
ADMINISTRATIVE INSPECTION OF:   )
                                     )
                                     )
Community Pharmacy             )    CASE NO:  1:17-mj-31
211 W. Carroll St                )
Tullahoma, Tennessee 37388    )

AFFIDAVIT FOR AN ADMINISTRATIVE INSPECTION WARRANT
UNDER THE AUTHORITY OF TITLE 21, UNITED STATES
CODE, SECTION 880

The undersigned, being duly sworn, deposes and says:

That the affiant, Samantha Rogers, is a duly authorized Diversion Investigator of the Drug Enforcement Administration, Department of Justice, assigned to the Nashville, Tennessee District Office.

That pursuant to Sections 878(2) and 880(b)(1), (2), and (3), Title 21, United States Code (U.S.C.), and Section 3, Appendix to Subpart R. Title 28, Code of Federal Regulations (C.F.R.), your affiant is authorized to execute administrative inspection warrants for the purpose of inspecting controlled premises of persons and firms registered under the Controlled Substances Act (CSA) (21 U.S.C. 800) et seq in order to inspect, copy, and verify the correctness of all records, reports, and other documents required to be kept or made under Section 827, Title 21, U.S.C. and Section 1304.01 et seq. Title 21, C.F.R.

That Community Pharmacy is registered under the provisions of the CSA, Title 21, U.S.C., Section 823 et seq., as a Retail Pharmacy and has been assigned DEA registration number FC2530790 in Schedules II through V, and is doing business at 211 W. Carroll St, Tullahoma, Tennessee 37388. That said place of business is a controlled premise within the meaning of Section 880(a), Title 21, U.S.C. and Section 1316.02(c), Title 21, C.F.R.

That Community Pharmacy is required to keep complete and accurate records of all controlled substances received, sold, delivered, or otherwise disposed of by them pursuant to 21 U.S.C. 827 and 21 C.F.R. Section 1304.01 et seq. on the controlled premises.

That the affiant has examined the files and records of the Drug Enforcement Administration and has determined that Community Pharmacy has never been inspected by the DEA. The affiant

has also determined that Community Pharmacy's supplier, H.D. Smith, elected to block all controlled substance sales to the pharmacy after H.D. Smith requested dispensing data from their account due to Community Pharmacy's unusual ordering pattern, and the pharmacy was reluctant to provide the data. Upon H.D. Smith's review of the data, they had immediate concerns over the combinations of controlled substances filled at the pharmacy. Community Pharmacy ranked as the fifth largest purchaser of hydromorphone in the State of Tennessee in 2016.

The affiant further represents that the need for the inspection of Community Pharmacy and the need for verifying the correctness of inventories, records, reports, and other documents required to be kept under the CSA and the need for verifying the security provisions utilized by the registrant in storing and handling controlled substances result from a valid public interest in the effective enforcement of the CSA and implementing regulations.

The affiant further states that the inspection will be conducted within regular business hours, and that the Investigator's credentials will be presented to the registrant, and that the inspection will begin as soon as practicable after the issuance of the warrant and will be completed with reasonable promptness and that the warrant will be returned within ten (10) days.

The affiant further states that the inspection will extend to the inspection and copying of inventories, records, reports, prescriptions, order forms, invoices, and other documents required to be kept and the inspection of all other things therein including records, files, and papers appropriate for the verification of the records, reports, and documents required to be kept under the CSA. The inspection will also extend to the inspection and inventory of stocks of controlled substances, finished or unfinished substances and pertinent equipment associated with the storage and handling of controlled substances, and if necessary any applicable records and/or samples of controlled substances will be seized.

The affiant will be accompanied by one or more Investigators who are employees of the Attorney General authorized to conduct administrative inspections.

A return will be made to this Magistrate (Court) upon the completion of the inspection. The affiant further states that she has verified and has knowledge of the facts alleged in this affidavit and that they are true to the best of her knowledge.

Wherefore, your affiant respectfully requests that an inspection warrant be issued.

Samantha Rogers
Diversion Investigator
Drug Enforcement Administration


Sworn to before me and subscribed in my presence on this ___3rd___ day of March, 2017.

_____
United States Magistrate Judge

2014 WL 11370114
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Fort Worth Division.

United States of America, Petitioner,

v.

Joseph Zadeh, D.O., Respondent.

Civil Action No. 4:14-CV-105-O
|
Signed 12/03/2014

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA AND RESPONDENT'S MOTION TO DISMISS

JEFFREY L. CURETON, UNITED STATES MAGISTRATE JUDGE

*1 Pending before the Court is a Petition to Enforce Drug Enforcement Administration Administrative Subpoena (the "Petition") [doc. 1], filed by the Government (also referred to as "Plaintiff" or "Petitioner") on February 13, 2014. Also pending is a Motion to Dismiss (the "Motion") [doc. 12] filed by Respondent Joseph Zadeh, D.O. ("Zadeh") (also referred to as "Respondent" or "Defendant") on April 24, 2014. In accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), the matter was referred to this Court for report and recommendation [doc. 8]. The Petition and Motion are fully briefed and the Court heard oral argument from the parties on July 31, 2014. Based on the record contained herein, the applicable law, and the arguments of counsel, the Court **RECOMMENDS** that the Government's Petition [doc. 1] be **GRANTED** and Zadeh's motion to dismiss [doc. 12] be **DENIED**.

## I. OVERVIEW

Petitioner, on behalf of the United States Department of Justice, Drug Enforcement Administration ("DEA"), petitions the Court for an order requiring Zadeh to comply with an administrative subpoena (the "Subpoena") issued by the DEA pursuant to 21 U.S.C.

§ 876(c) relative to an ongoing investigation for possible misconduct in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq. It is undisputed that Zadeh, who is a DEA registrant permitted to prescribe controlled substances in Schedules II-V as defined by the CSA, has failed to comply with the Subpoena issued to him. By way of his filings in this action, Zadeh challenges the validity and enforceability of the Subpoena.

Zadeh asserts that this case presents a number of important issues of Constitutional and statutory interpretation that are matters of first impression, at least in the Fifth Circuit. In sum, Zadeh frames the issues as: Whether the Government is statutorily and constitutionally entitled to obtain the medical records of the sixty-seven patients identified in the Subpoena and, if so, whether the Government can simultaneously prevent Zadeh from informing the sixty-seven patients of the Government's attempts to obtain their records. On the other hand, the Government argues that the subject Subpoena was lawfully issued and there is no legal justification for Zadeh's failure to comply. Consequently, the Government seeks an order to enforce the Subpoena.

## II. FACTUAL BACKGROUND

The following undisputed facts are taken from the Petition, the attached declarations, and Zadeh's response to the Petition. On or about November 25, 2013, the DEA issued the Subpoena pursuant to 21 U.S.C. § 876 of the CSA. *See* Petitioner's Appendix in Support of Petition to Enforce Drug Enforcement Administration Administrative Subpoena ("Pet'r App."), Ex. 1 at 6. [1] In the Subpoena, the DEA states that it is permitted by 45 C.F.R. § 164.512(f), which is a regulation pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), [2] 42 U.S.C. § 1320d *et seq.*, to request protected health information. *See* Pet'r App., Ex. 2 at 9. The Subpoena seeks production by Zadeh of all "[p]atient medical records" for sixty-seven (67) patients, covering a period of approximately fourteen months (from October 1, 2012 to November 25, 2013). *See* Pet'r App., Ex. 2 at 9-12. The Subpoena broadly defines "patient medical records" to include "diagnosis, intake, prescriptions, laboratory work, referrals, copy of identification, insurance and method of payment." Pet'r App., Ex. 2 at 9. In addition, the Subpoena states:

**\*2** This is an administrative subpoena issued by the Drug Enforcement Administration (DEA), a federal law enforcement agency, for records that may include protected health information. DEA is authorized by 21 U.S.C. § 876 to issue an administrative subpoena and is permitted by 45 C.F.R. § 164.512(f) to request protected health information. The information sought is relevant and material to a legitimate law enforcement inquiry; the subpoena is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and de-identified information cannot reasonably be used. NONDISCLOSURE: Disclosure of any information concerning this subpoena would impede a federal law enforcement investigation. Pursuant to 45 C.F.R. § 164.528(a)(2), you must suspend notice to any individual whose protected health information is disclosed in response to this subpoena for a period of one year from today's date.

(Pet'r App., Ex. 2 at 9.)

On February 13, 2014, the Government filed the present Petition along with a Memorandum and an Appendix in support. Thereafter, on April 24, 2014, Zadeh filed both a Response and a Motion to Dismiss ("Motion").[3] In a Joint Status Report, dated July 11, 2014, the Government proposed placing several limitations on the original Subpoena, including limiting the scope of the Subpoena for medical records to the following: (1) information sufficient to identify the patient, including the patient's full name, date of birth, and address; (2) limited intake information necessary to identify the patient and the condition for which a controlled substance was prescribed; (3) information related to a diagnosis for which a controlled substance was prescribed; (4) laboratory work upon which a controlled substance was prescribed, to include MRI results and blood test results; and (5) information pertaining to the prescription of a controlled substance, including dates of prescriptions, types of prescriptions, and quantities prescribed. (July 11, 2014 Joint Status Report [doc. 30] at 2-3.) The Court held a hearing on the Petition and Motion on July 31, 2014.

## III. PRELIMINARY PROCEDURAL ISSUE

In their filings and at the oral argument in this matter, the parties have discussed the procedural posture of the case before the Court. To begin, the Federal Rules of Civil Procedure apply to adversary actions to enforce subpoenas, unless exempted. *See* Fed. R. Civ. P. 81. In this case, Zadeh states that he is unaware of any order or statute that exempts this action from the Rules of Civil Procedure. Defendant's Brief in Support of Response to Petition for Enforcement ("Def.'s Br. in Supp. of Resp. to Pet.") at 3. As such, Zadeh asserts that the proper construction of the Petition should be as a "complaint" in this action. *See* Def.'s Br. in Supp. of Resp. to Pet. at 3; Defendant's Motion to Dismiss ("Def.'s Mot. to Dismiss") at 3-4; *see also* Fed. R. Civ. P. 3 (stating that an action is initiated by a complaint); 7(a) (listing available pleadings in civil actions). However, the issue being unclear, out of an abundance of caution, Zadeh indicates that he is responding to the Petition in two ways: (1) filing a "Response" to the Government's Petition, which treats the petition as a "motion"; and (2) separately filing a motion to dismiss, which treats the Petition as a "complaint."

**\*3** On the other hand, the Government contends that the Petition is actually a motion, even though it is not denominated as such and despite the fact that a summons of the Petition was formally served on Zadeh. Moreover, the Court notes that there is an "Order Referring Motion" [doc. 8], which specifically refers "this motion and all related responses, replies, briefs in support, appendices, etc." to the undersigned and would seem to support the Government's construction of the Petition as a "motion."

While an interesting procedural conundrum, after reviewing the parties' arguments and the case law regarding agency subpoena enforcement, the Court concludes that, regardless of what it is titled and construed, the Petition to enforce an agency subpoena is a unique proceeding and the Court's scope of inquiry

is narrow. *See N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 997 (N.D. Cal. 2004). Moreover, "[s]ubpoena enforcement proceedings are summary in nature." *E.E.O.C. v. Suburban Transit Sys., Inc.*, 538 F. Supp. 530, 533 (D.C. Ill. 1982). Consequently, while the petition to enforce is akin to a dispositive motion as it "constitutes the entire case before the Court," the over-riding matter for the Court to decide is whether to enforce the subpoena. *See In re Admin. Subpoena Blue Cross Blue Shield of Mass., Inc.*, 400 F. Supp. 2d 386, 389 (D. Mass. 2005).

The statute pursuant to which this action was brought, 21 U.S.C. § 876, specifically provides that the "Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpoenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpoena." The statute does not explicitly require the filing of a complaint to begin such enforcement proceeding. Instead, the critical issues that the court must consider are: (1) whether the investigation is conducted pursuant to a legitimate purpose; (2) whether the information requested under the subpoena is relevant to that purpose; (3) whether the agency already has the information it is seeking with the subpoena; and (4) whether the agency has followed the necessary administrative steps in using the subpoena. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001). Thus, the Court will review the Petition under the standards set forth above regarding enforcement of subpoenas and make appropriate findings of fact and conclusions of law.

## IV. ANALYSIS

Pursuant to 21 U.S.C. § 876 of the CSA, the Attorney General may subpoena witnesses and require the production of any records that the Attorney General finds are relevant or material to any investigation relating to functions under the CSA with respect to controlled substances. 21 U.S.C. § 876(a). These administrative subpoenas are not self-enforcing and "in the case of contumacy by or refusal to obey a subpena[4] issued to any person," the Attorney General may "invoke the aid of any court of the United States" within the appropriate

jurisdiction. 21 U.S.C. § 876(c) (footnote inserted). In both his Response to Petition for Enforcement and his Motion to Dismiss, Zadeh claims generally that this action is barred as a matter of law pursuant to: (1) HIPPA; (2) Texas statutory law; and (3) the Fourth Amendment to the Constitution. Def.'s Br. in Supp. of Resp. to Pet. at 6-18. The Court will consider each basis herein.

### A. HIPAA

**\*4** Pursuant to 45 C.F.R. § 164.512(f), which is a HIPAA regulation, a "covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official" if certain conditions are met, including in compliance with and as limited by the relevant requirements of an administrative subpoena. 45 C.F.R. § 164.512(f)(1)(ii)(C). As to HIPAA, Zadeh argues that the Government has failed to demonstrate that this law is applicable to him or the records at issue. Def.'s Br. in Supp. of Resp. to Pet. at 6-9. Defendant claims that HIPAA is intended to prevent the disclosure of various medical records, except in very limited circumstances that are generally set forth in 45 C.F.R. § 164.512. Def.'s Br. in Supp. of Resp. to Pet. at 6.[5] Defendant argues that the Government's reliance on 45 C.F.R. § 164.512(f)(1)(ii)(C) to allow disclosure of Zadeh's medical records is misplaced since such provision only applies to "covered entities." (*Id.* at 6-7.) Defendant asserts that the Government has "wholly failed to produce evidence that would show Dr. Zadeh is a 'covered entity' under standards set forth in 42 U.S.C.A. § 1320d-1, 45 C.F.R. § 160.102(a), 45 C.F.R. § 160.103, and 45 C.F.R. § 164.104(a). Def.'s Br. in Supp. of Resp. to Pet. at 7; Def.'s Mot. to Dismiss at 6. Consequently, Defendant claims that 45 C.F.R. § 164.512(f)(1)(ii)(C) "cannot be a basis for disclosure." Def.'s Br. in Supp. of Resp. to Pet. at 7.

The Government, on the other hand, argues that it "has no burden to establish the applicability of HIPAA or any exception thereto ... as the requirements of HIPAA apply to the *disclosing* entity, not the *requesting* entity." Pl.'s Reply in Support of Petition to Enforce Administrative Subpoena ("Pl.'s Reply") at 2-3. At the hearing before the Court, the Government further stated:

> But it seems—of course, Abbas Zadeh[6] has indicated he's not a covered entity. We accept him at face value on that subject. We have

no way to necessarily verify it. And then Joseph Zadeh, he doesn't seem to want to confirm one way or the other, but as we've argued, whether HIPAA applies or whether it doesn't apply, the requested disclosure is not prohibited.

Transcript of July 31, 2014 Proceedings ("Tr.") at 30, lines 16-22 (footnote added).

Based upon the evidence before the Court and the admission by the Government that it does not know if Zadeh is a covered entity that is subject to HIPAA, the Court concludes that the provisions of HIPAA have not been properly invoked and, thus, will not be considered by the Court. Because HIPAA has not been properly invoked, the Court further concludes that the Government's reliance on 45 C.F.R. 164.528(a)(2), a HIPAA regulation, to prevent Zadeh from informing the sixty-seven patients of the Government's attempts to obtain their records is also improper. Consequently, Zadeh is not prohibited from providing his patients with notice of the Subpoena. Based on the foregoing, the next issue is whether enforcement of the Subpoena is barred by Texas law.

**B. Texas State Law**

Zadeh next claims that Texas Occupations Code section 159.002, which is part of the Medical Practice Act, prevents disclosure of both patient communications and medical records. Section 159.002 states, as relevant here:

**\*5** (a) A communication between a physician and a patient, relative to or in connection with any professional services as a physician to the patient, is confidential and privileged and may not be disclosed except as provided by this chapter.

(b) A record of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician is confidential and privileged and may not be disclosed except as provided by this chapter.

Tex. Occ. Code Ann. § 159.002 (West 2012); *see Abbott v. Tex. State Bd. of Pharmacy*, 391 S.W.3d 253, 257 (Tex. App.—Austin 2012, no pet.) ("Under chapter 159 of the medical practice act, physician-patient communications and medical records are considered 'confidential and

privileged and may not be disclosed except as provided by the [medical practice act].' +"). This privilege may be claimed by the patient or by the physician, on behalf of the patient. Tex. Occ. Code Ann. § 159.002(e) (West 2012). The Medical Practice Act, however, sets forth several exceptions to this privilege. For example, section 159.003 sets forth exceptions that exist "in a court or administrative proceeding," whereas section 159.004 sets forth exceptions that exist "in a situation other than a court or administrative proceeding." Tex. Occ. Code Ann. §§ 159.003, 159.004 (West 2012); *see Abbott*, 391 S.W.3d at 257. While it appears that the Medical Practice Act could act as a bar to Zadeh being forced to turn over the subpoenaed records, depending on whether section 159.003 or 159.004 would apply,[7] the Court must first determine whether the CSA preempts Texas state law. *See* Petitioner's Reply in Support of Petition to Enforce Subpoena ("Pet.'s Reply") at 7-8; Tr. at 18, lines 20-24. If so, the preemption of state law would make any defense under the Medical Practice Act irrelevant.

**C. Preemption and the Supremacy Clause**

Zadeh argues that he cannot comply with the Subpoena because compliance would require him to violate the Texas Medical Practice Act, which prevents disclosure of both patient communications and medical records. The Subpoena in this case was issued to Zadeh pursuant to 21 U.S.C. § 876 of the CSA[8] as part of an ongoing investigation of possible violations of the CSA. (*See* Appendix in Support of Petition to Enforce DEA Administrative Subpoena ("App. in Supp. of Pet.") at Ex. 1.) This is an appropriate purpose authorized by section 876 as such subpoenas are authorized for use in both investigation and enforcement. *See Oregon Prescription Drug Monitoring Program v. U.S. DEA*, 998 F. Supp. 2d 957, 960 (D. Or. 2014) ("The CSA empowers the Attorney General, and executive agencies acting pursuant to his authority, with broad authority to issue administrative subpoenas to investigate drug crimes."); *United States v. Mich. Dep't of Cmty. Health*, No. 1:10-mc-109, 2011 WL 2412602, at \*11 (W.D. Mich. June 9, 2011).

**\*6** While the provisions regarding physician-patient communications in the Medical Practice Act do not expressly conflict with the provisions regarding the issuance of subpoenas under the CSA, such provisions do act as a potential defense to Zadeh in complying with the Subpoena. "The Supremacy Clause unambiguously

Case 1:17-mj-00031-CHS   Document 1   Filed 03/03/17   Page 7 of 24   PageID #: 7

provides that if there is any conflict between federal and state law, federal law shall prevail. It is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants, however legitimate or dire those necessities may be." *Mich. Dep't of Cmty. Health,* 2011 WL 2412602, at *12 (quoting *Gonzales v. Raich,* 545 U.S. 1, 29 (2005)). "Preemption of state law by federal law may be apparent from the express terms of the federal statute or it may be implicit in the statute." *U.S. Dep't of Justice v. Colo. Bd. of Pharmacy,* No. 10-cv-01116-WYD-MEH, 2010 WL 3547898, at *2 (D. Colo. Aug. 13, 2010). "Implicit preemption of state law may occur in at least two circumstances, when: (1) Congress intends federal law to occupy the field, or (2) state law is naturally preempted to the extent it conflicts with a federal statute." *Id.* (internal citations and quotations omitted). "Conflict preemption occurs when 'compliance with both federal and state regulations is a physical impossibility' or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' +" *Id.* (quoting *Chamber of Commerce v. Edmondson,* 594 F.3d 742, 766-67 (10th Cir. 2010)). *See Barnett Bank v. Nelson,* 517 U.S. 25 (1996); *In re Grand Jury Proceedings,* 607 F. Supp. 2d 803, 806 (W.D. Tex. 2009).

In this case, while it is clear that Congress did not intend to "occupy the field" of drug enforcement, "[t]he Supremacy Clause operates to resolve conflicts between federal and state law in areas, such as drug enforcement, where Congress does not 'occupy the field.' +" *Mich. Dep't of Cmty. Health,* 2011 WL 2412602, at *12; *see* 21 U.S.C. § 903 ("No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.") To determine whether the CSA implicitly preempts the Medical Practice Act, the Court must look to principles of statutory construction. *Colo. Bd. of Pharmacy,* 2010 WL 3547898, at *3.

According to the Government, the subpoenaed patient medical records are requested to help determine whether Zadeh has violated the CSA based on the findings of an investigation into potential CSA violations in Tarrant County, Texas. *See* App. in Supp. of Pet. at Ex. 1, p. 1-2. The Government contends that (1) is not in possession of the requested information, (2) has limited the Subpoena in scope to information that is relevant to the investigation, and (3) has limited the time period for which patient records have been requested. App. in Supp. of Pet. at Ex. 1, p. 2. However, pursuant to the provisions of the Texas Medical Practice Act, Zadeh claims, *inter alia,* that he is not permitted to disclose such information regarding his patients' medical records. Zadeh does not claim that he does not have access to the requested records.

To the extent that the Medical Practice Act restricts Zadeh's ability to produce such records, such restriction stands as an obstacle to the DEA's efforts to accomplish its investigation of a potential violation of the CSA through the subpoena process pursuant to 21 U.S.C. § 876. *See Edmondson,* 594 F.3d at 769 (stating that state law is preempted "if it interferes with the methods by which the federal statute was designed to reach [its] goal"); *Colorado Board of Pharmacy,* 2010 WL 3547898, at *4. Thus, the DEA's only apparent bar to obtaining the requested information from Zadeh is the Texas Medical Practice Act's potential restriction on releasing patient medical records. The Texas legislature, however, cannot create a statutory obstacle to the federal government's enforcement of federal law regulating controlled substances. Consequently, the Court recommends finding that such restriction under the Texas Medical Practice Act conflicts with and is preempted by 21 U.S.C. § 876(a).

### D. Fourth Amendment

*7 The last issue before the Court is whether the Fourth Amendment prohibition against unreasonable searches and seizures bars enforcement of the Subpoena at issue. Zadeh argues that "the constitutional requirements are heightened when greater privacy interests are at issue, and medical records fall at the high end of the privacy scale." Def.'s Br. in Supp. of Resp. to Pet. at 13. Specifically, Zadeh states:

Given the reasonable expectations of privacy by Dr. Zadeh and his patients, the Courts must apply more than the usual level of scrutiny. Indeed, Dr. Zadeh contends that the Subpoena should be subject to the probable cause standard under the circumstances of this case. Although the Court is not at liberty to apply a probable-cause standard under the existing

state of the law, the Fourth Amendment's reasonable standard nevertheless requires a meaningful balancing of the privacy interests in the medical records with the Government's genuine need to obtain the specific information requested. To date, Dr. Zadeh is aware of only one decision that has addressed the applicability of DEA subpoenas to medical records. In that case, the Oregon District Court determined that the "DEA's use of administrative subpoenas to obtain prescription records from the [Prescription Drug Monitoring Program] violates the Fourth Amendment." The Court's reasoning is equally applicable to this case. Indeed, the reasoning is even stronger in this case, as this Subpoena is not limited to prescription records. Instead, the DEA seeks *all* medical records, including "diagnosis, intake, prescriptions, laboratory work, referrals, copy of identification, insurance and method of payment." It is difficult to think of a more intrusive request for private information than the Subpoena in this case, and such a request cannot be justified based on the scanty assertions in the Subpoena and in the Government's filings in this case.

Def.'s Br. in Supp. of Resp. to Pet. at 14-15 (internal citations and footnotes omitted).

An "administrative subpoena may not be 'too indefinite or broad.' +" *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012). The critical issues that the Court must consider are: (1) whether the investigation is conducted pursuant to a legitimate purpose; (2) whether the information requested under the subpoena is relevant to that purpose; (3) whether the agency already has the information it is seeking with the subpoena; and (4) whether the agency has followed the necessary administrative steps in using the subpoena. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001).[9] The initial burden to show that such criteria have been met is on the government, although the initial burden to make a prima facie case is "minimal." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014). Once the Government has made a prima facie case, the burden shifts to the party opposing the subpoenas.[10] *Id.* A party resisting enforcement bears a heavy burden to establish that enforcement of the Secretary's subpoena will result in an abuse of judicial process. *United States v. Oncology Servs. Corp.*, 60 F.3d 1015, 1020 (1995). "The district court must enforce the

subpoena unless the information is 'plainly incompetent or irrelevant to *any* lawful purpose.' +" *Id.* (quoting *Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 872 (3d Cir. 1990)). "The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946). " +'As long as the agency satisfies [the above] modest requirements, the subpoena is per se reasonable and Fourth Amendment concerns are deemed satisfied.' +" *Colorado Bd. of Pharmacy*, 2010 WL 3547898, at *3 (quoting *United States v. Sturm, Ruger & Co., Inc.*, 84 F.3d 1, 4 (1st Cir. 1996)).

*8 As set forth above, Zadeh argues that forcing him to produce the medical records of sixty-seven of his patients violates his rights under the Fourth Amendment. The Fourth Amendment provides protection against "unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment does not protect against all searches or seizures, rather it guards against searches and seizures of items or places in which a person has a reasonable expectation of privacy."[11] *Oregon Prescription Drug Monitoring Program*, 998 F. .Supp. 2d at 963. "The Fourth Amendment protects people, not places, and to invoke the protections of the Fourth Amendment, a person must first show that they have 'an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable.' +" *Id.* at 964 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

There appear to be a limited number of cases that have specifically addressed the applicability of the Fourth Amendment to DEA subpoenas under 21 U.S.C. § 876 seeking medical records. In *Oregon Prescription Drug Monitoring Program*, the state prescription drug monitoring program ("PDMP") brought an action against the DEA, seeking a declaration of its rights and obligations in complying with administrative subpoenas that sought prescription records from the PDMP. The Oregon District Court held that the "DEA's use of administrative subpoenas to obtain prescription records from the PDMP violates the Fourth Amendment." *Oregon Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 967. Specifically, the Oregon District Court stated:

> In this matter, the court easily concludes that intervenors' subjective expectation of privacy in their

prescription information is objectively reasonable. Although there is not an absolute right to privacy in prescription information, as patients must expect that physicians, pharmacists, and other medical personnel can and must access their records, it is more than reasonable for patients to believe that law enforcement agencies will not have unfettered access to their records. The prescription information maintained by PDMP is intensely private as it connects a person's identifying information with the prescription drugs they use. The DEA attempts to draw a distinction between medical records and prescription information in order to distinguish the present case from *Tucson Woman's Clinic's* conclusion that "all provision of medical services in private physicians' offices carries with it a high expectation of privacy." This distinction is very nearly meaningless. By obtaining the prescription records for individuals like John Does 2 and 4, a person would know that they have used testosterone in particular quantities and by extension, that they have gender identity disorder and are treating it through hormone therapy. It is difficult to conceive of information that is more private or more deserving of Fourth Amendment protection. That this expectation of privacy in prescription information is protected in ORS 431.966 and advertised on PDMP's public website, makes that expectation all the more reasonable.

*Oregon Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 966 (internal footnotes and citations omitted).

On the other hand, in *U.S. Dep't of Justice v. Colorado Board of Pharmacy, supra*, the United States Magistrate Judge recommended enforcing DEA subpoenas of confidential state pharmacy records in a federal investigation of possible drug offenses by three physicians in violation of the CSA. [12] In this case, although the Board did not bring a Fourth Amendment challenge *per se*, the Court found that the subpoenas met the "Fourth Amendment requirements and are per se reasonable" as they were authorized, properly served, and contained an "adequate description of information relevant to the investigations." *Colorado Bd. of Pharmacy*, 2010 WL 3547898, at *3. [13]

**\*9** Moreover, in *United States v. Acklen*, 690 F.2d 70, 75 (6th Cir. 1982), the Sixth Circuit specifically found that a pharmacist has a reduced expectation of privacy in records kept in compliance with the CSA.

In this case, the DEA "used **administrative inspection** warrants issued pursuant to 21 U.S.C.A. § 880 to search the premises of the defendant's pharmacy, removing prescriptions he suspected were forged or altered." [14] *In re Subpoenas Duces Tecum Nos. A99-001, A99-002, A99-003 and A99-004*, 51 F. Supp. 2d 726, 732 (W.D. Va. 1999) (summarizing the case background in *United States v. Acklen*, supra). The Sixth Circuit reversed the district courts granting of a motion to suppress as to one of the **administrative inspection** warrants based on a violation of the Fourth Amendment. *Acklen*, 690 F.2d at 75. The Sixth Circuit specifically held that, like the mining, firearms, and liquor industries, the pharmaceutical industry is a "pervasively regulated industry and consequently pharmacists and distributors subject to the Controlled Substances Act have a reduced expectation of privacy in the records kept in compliance with the Act." *Id.*; *see also United States v. Jamieson-McKames Pharm., Inc.*, 651 F.2d 532 (8th Cir. 1981) (holding that pharmacist had no reasonable expectation of privacy in items subject to **administrative inspection** under the Food, Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.*). The Court in *Acklen* held that the traditional judicial probable cause requirement did not apply to **administrative inspection** warrants. *Acklen*, 690 F.2d at 74-75. The Court further stated that the warrant in question, which was issued before any commitment to criminally prosecute the defendant, was valid because it had been issued upon a showing of "**administrative** probable cause under 21 U.S.C. § **880**(d)." *Acklen*, 690 F.2d at 75.

In *United States v. Rogers*, an unpublished opinion, the Sixth Circuit extended the reasoning of *Acklen* to apply to the issuance by FBI agents of an administrative subpoena to a pharmacist pursuant to 21 U.S.C. § 876(a). *See United States v. Rogers*, 976 F.2d 734, 1992 WL 217722, at *4-5 (6th Cir. Sept. 9, 1992). In this case, Rogers, a licensed Michigan pharmacist and owner of a pharmacy, appealed his jury convictions of one count of conspiracy to distribute a controlled substance and twenty counts of distribution of controlled substances outside the course of legitimate pharmacy practice. *Rogers*, 1992 WL 217722, at *1. Rogers argued, *inter alia*, that "the use of an administrative subpoena pursuant to 21 U.S.C. § 876, rather than a judicial search warrant, violated his Fourth Amendment rights, since he was clearly the 'target' of the investigation." *Rogers*, 1992 WL 217722, at *4. The Court, noting the *Acklen* decision and that administrative

subpoenas under section 876 of the CSA do not require some level of probable cause but "merely a finding of relevancy versus materiality," found that the scope of the search and the manner in which it was conducted was valid. [15] *Rogers*, 1992 WL 217722, at *5.

Finally, the Supreme Court has held, in cases involving administrative subpoenas, that the Fourth Amendment, at most, ensures that the inquiry is one the demanding agency is authorized by law to make and that the materials sought are relevant to the authorized inquiry and guards against abuse by way of too much indefiniteness or breadth in the things required to be "particularly described." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208 (1946). [16] In other words, while valid subpoenas duces tecum do not constitute seizures, invalid subpoenas, which are defined as those that are not sufficiently limited in scope, relevant in purpose, or specific in directive such that compliance will be unreasonably burdensome, may constitute illegal searches and seizures. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984).

**\*10** In this case, it is clear that the information sought by the DEA is relevant to its investigation, but the question is whether the use of an administrative subpoena to obtain the information sought is reasonable. After thoroughly reviewing the case law set forth above, the Court finds the reasoning set forth in *Colorado Board of Pharmacy*—holding that properly authorized DEA subpoenas of confidential state pharmacy records in a federal investigation of possible CSA violations by three physicians were per se reasonable, and thus, passed Fourth Amendment muster—more persuasive than the analysis in *Oregon Prescription Drug Monitoring Program*. To begin with, as noted by the Court in *Acklen*, 690 F.2d at 75, the pharmaceutical industry is a "pervasively regulated industry" and "virtually every phase of the drug industry is heavily regulated, from packaging, labeling, and certification of expiration dates." *Jamieson-McKames Pharm.*, Inc., 651 F.2d at 537. While the cases discussed above mainly dealt with pharmacies and pharmacists, the Court concludes that such analysis can easily be applied to physicians, and in turn, their patients. Both have a reduced expectation of privacy in the medical records regarding controlled substances as such records are relevant to the issue of whether there has been compliance with the CSA, a federal law that regulates controlled substances. *See* 21 U.S.C. §§ 822, 823. Zadeh, a DEA registrant under the CSA, and in turn his patients, cannot reasonably

claim that Zadeh was not aware of the CSA and his obligation under such law to dispense and distribute controlled substances in a manner that is authorized by law. [17] Moreover, pursuant to the CSA, the government's stake in the investigation and the strong public interest in regulating controlled substances outweigh the individual privacy interests asserted herein. *See Ferguson v. City of Charleston*, 186 F.3d 469, 483 (4th Cir. 1999), *cert. granted on other grounds*, 528 U.S. 1187 (2000) (stating that the government has a compelling interest in identifying illegal activity and in deterring future misconduct). Thus, the Court concludes that the Subpoena, as limited by the Government as set forth in July 11, 2014, Joint Status Report, does not violate the Fourth Amendment.

## RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** that the Government's Petition to Enforce Drug Enforcement Administration Administrative Subpoena [doc. 1], as limited by the Government as set forth in the July 11, 2014 Joint Status Report, be **GRANTED** and that the District Court order Zadeh to respond to the Subpoena within fourteen (14) days after the District Court's order. In addition, the Court **RECOMMENDS** that Zadeh's Motion to Dismiss [doc. 12] be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings

and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 17, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response

shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 3, 2014.

**All Citations**

Slip Copy, 2014 WL 11370114

Footnotes

1    Because the pages of the Government's appendix are not consecutively numbered, the cited page numbers refer to the page numbers electronically stamped by the Court's ECF system at the top right of each page of the appendix.

2    Congress enacted HIPAA in 1996 to address the importance of the privacy of medical records. *See National Abortion Federation v. Ashcroft,* No. 04 C 55, 2004 WL 292079, at *2 (N.D. Ill. Feb. 6, 2004).

3    The procedural construction of this case resulting in Zadeh filing both a Response and Motion to Dismiss will be dealt with *infra* at Part III.

4    The Court notes that "subpoena" can also be spelled "subpena" as used in the CSA. *See* Black's Law Dictionary 1654 (10th ed. 2010).

5    The Court notes that "while HIPAA generally requires confidentiality of medical records, and provides both civil and criminal penalties for improper disclosures of medical information, there is no express or implied private cause of action under HIPAA." *Bailey v. Terrell ISD,* No. 3:12-CV-3962-N-BH, 2014 WL 1664230, at *1 (N.D. Tex. Apr. 25, 2014); *see Roberts v. Unitrin Specialty Lines Ins. Co.,* 405 Fed.Appx. 874, 882 & n.8 (5th Cir. 2010); *Acara v. Banks,* 470 F.3d 569, 572 (5th Cir. 2006). "Instead, HIPAA limits enforcement of the statute to the Secretary of Health and Human Services and, under certain circumstances, state attorneys general." *Fox v. United States,* No. 3:10-cv-126 DPJ-MTP, 2012 WL 2685067, at *2 (S.D. Miss. July 6, 2012).

6    Zadeh's father, Abbas Zadeh, has a very similar case pending before the Court in cause number 4:14-CV-106-0 in which the Government has also filed a Petition to Enforce Drug Enforcement Administration Administrative Subpoena. The hearing before the Court on July 31, 2014 was a joint hearing involving both cases.

7    For example, if section 159.003 is applicable because the issuance of an administrative subpoena is found to be an "administrative proceeding," it does not appear that there is an exception that would prevent Zadeh from disclosing the patient records sought in the Subpoena. Tex. Occ. Code Ann. § 159.003 (West 2012). However, if section 159.004 is applicable because the issuance of an administrative subpoena is found to be a "situation other than an ... administrative proceeding," then there appears to be an exception in subsection (1) that would allow Zadeh to disclose the patient records sought in the Subpoena. Tex. Occ. Code Ann. § 159.004 (West 2012).

8    Congress enacted the CSA to protect the public from a growing level of drug trafficking due to an increasing drug problem in the United States. *See United States v. Mountain States Tel. & Tel. Co., Inc.* 516 F. Supp. 225 (D.C. Wyo. 1981). "The [CSA] was intended as a comprehensive federal program to place certain drugs and other substances under strict federal controls to be administered by the Attorney General. Id. The CSA, "which requires all who are so engaged [in manufacturing and distributing controlled drugs] to register with the U.S. Attorney General and to maintain certain records, imposes both civil and criminal penalties for its violation." *United States v. Acklen,* 690 F.2d 70, 71 (6th Cir. 1982).

9    This standard has been phrased slightly differently in other circumstances. *See, e.g., United States v. Morton Salt Co.,* 338 U.S. 632, 652 (1950) (stating that an administrative subpoena is valid if: (1) it is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome); *Oregon Prescription Drug Monitoring Program,* 998 F. Supp. 2d at 966. *See also E.E.O.C. v. Md. Cup Corp.,* 785 F.2d 471, 476 (4th Cir. 1986) ("Upon petitioning for enforcement of an administrative subpoena, the issuing

agency must make a threshold showing that the subpoena is within the agency's authority, that the agency has satisfied statutory requirements of due process, and that the information sought is relevant and material to the investigation.")

10   "Once the agency makes this showing, the court must enforce the subpoena unless the party being investigated demonstrates that the suit is unduly burdensome." *Md. Cup Corp*, 785 F.2d at 476.

11   "Whether a particular governmental intrusion falls within the protection of the fourth amendment depends upon whether the defendant has a reasonable expectation of privacy in the area searched or the property seized." *United States v. Acklen*, 690 F.2d 70 (6th Cir. 1982) (quoting *Katz v. United States*, 389 U.S. 347 (1967)).

12   The District Court entered an "Order Affirming Recommendation and Granting Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Agency on September 3, 2010. *See United States Dep't of Justice v. Colorado Bd. of Pharmacy*, No. 10-cv-01116-WYD-MEH, 2010 WL 3547896, at *1 (D. Colo. Sept. 3, 2010).

13   In addition, as set forth above, the United States Magistrate Judge found that the Colorado state law that restricted release of prescription drug use information to law enforcement officials was preempted by 21 U.S.C. § 876.

14   "**21** U.S.C.A. **§ 880** authorizes the Attorney General or her designees to enter certain premises for the purpose of '**inspecting**, copying, and verifying the correctness of records, reports, or other documents required to be kept or made under the Controlled Substances Act.' +" *In re Subpoenas Duces Tecum*, 51 F. Supp. 2d at 732 n.4.

15   The Court specifically stated, "Although *Acklen* involved administrative warrants which require some level of probable cause, as opposed to the § 876 administrative subpoena at issue here which requires merely a finding of relevancy versus materiality, the distinction does not require a different result under the rationale of *Acklen*, since the agents were clearly permitted to execute the subpoena absent suspicion." *Rogers*, 1992 WL 217722, at *5.

16   The Court notes that, although both parties appear to agree that the subpoena at issue is not subject to the traditional probable cause standard, there is some case law that indicates otherwise, at least where the use of the administrative subpoena is, as in this case, for purposes of a criminal investigation. *See, e.g., In re Subpoenas Duces Tecum*, 51 F. Supp. 2d at 732-736 (discussion of issue and review of various cases). But *see Doe v. United States*, 253 F.3d 256, 264 (6th Cir. 2001) ("Unlike the Fourth Circuit [in *In re Subpoena Duces Tecum*, 228 F.3d 341, 347-49 (4th Cir 2000)], the district court in *In re Subpoena Duces Tecum*[, 51 F. Supp. 2d 726, 733-36 (W.D. Va. 1999),] was more troubled by the notion of simply applying the reasonable relevance standard to subpoenas issued under § 3486.").

17   Generally, "[t]he Controlled Substances Act prohibits a person from dispensing or distributing a controlled substance." *United States v. MacKay*, 715 F.3d 807, 814 (10th Cir. 2013). "But a physician is exempt from this prohibition as long as he is registered and acting as authorized." *Id.; see* 21 U.S.C. §§ 822, 823. "For a controlled substance prescription to be effective, the prescription 'must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.' +" *MacKay*, 715 F.3d at 814 (quoting 21 C.F.R. § 1306.04(a)).

---

**End of Document**                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

690 F.2d 70
United States Court of Appeals,
Sixth Circuit.

UNITED STATES of America, Plaintiff-Appellant,
v.
Thomas M. ACKLEN, Defendant-Appellee.

No. 81-5544.
|
Argued April 23, 1982.
|
Decided Sept. 22, 1982.

Government appealed from a decision of the United States District Court for the Eastern District of Tennessee, Frank W. Wilson, Chief Judge, granting defendant's motion to suppress evidence obtained during the course of an administrative inspection of his pharmacy conducted in accordance with the Controlled Substances Act. The Court of Appeals, Contie, Circuit Judge, held that the administrative inspection warrant issued under the Act, in order to uncover evidence in support of the criminal investigation, was valid.

Reversed and remanded.

George Clifton Edwards, Jr., Chief Judge, dissented and filed opinion.

West Headnotes (6)

[1] **Criminal Law**
 ⮞ Evidence Wrongfully Obtained
 District court's finding at suppression hearing that the primary purpose of second administrative inspection of pharmacy was to uncover evidence in support of criminal investigation was not clearly erroneous. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 510, 21 U.S.C.A. § 880.

 4 Cases that cite this headnote

[2] **Searches and Seizures**

[2] ⮞ Emergencies and Exigent Circumstances; Opportunity to Obtain Warrant
 Whether a particular governmental intrusion falls within the protection of the Fourth Amendment depends on whether the defendant has a reasonable expectation of privacy in the area searched or the property seized; if he has such a reasonable expectation, then, absent exigent circumstances, the government may conduct a search only after obtaining a warrant upon a showing of probable cause. U.S.C.A.Const.Amend. 4.

 3 Cases that cite this headnote

[3] **Searches and Seizures**
 ⮞ Probable or Reasonable Cause
 Test for probable cause for a search warrant is whether the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that certain items are the fruits, instrumentalities, or evidence of crime and that these items are presently to be found at a certain place. U.S.C.A.Const.Amend. 4.

 6 Cases that cite this headnote

[4] **Inspection**
 ⮞ Mode of Inspection in General
 **Searches and Seizures**
 ⮞ Administrative Warrants
 For purposes of an administrative search, probable cause justifying issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment. U.S.C.A.Const.Amend. 4.

 3 Cases that cite this headnote

[5] **Searches and Seizures**

Case 1:17-mj-00031-CHS Document 1 Filed 03/03/17 Page 14 of 24 PageID #: 14

⚙ Administrative Inspections and Searches; Regulated Businesses

Pharmaceutical industry, like the mining, firearms, and liquor industries, is a pervasively regulated industry and consequently pharmacists and distributors subject to the Controlled Substances Act have a reduced expectation of privacy in the records kept in compliance with the Act. Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 101-709, 403, 21 U.S.C.A. §§ 801-904, 843.

12 Cases that cite this headnote

**[6]**   **Controlled Substances**
⚙ Probable Cause in General

Administrative inspection warrant issued under section of the Controlled Substances Act, in order to uncover evidence in support of criminal investigation, was valid, inasmuch as it was based on an administrative showing of probable cause and the search was conducted in accordance with the statute. Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 101, 510(d), 21 U.S.C.A. §§ 880, 880(d); U.S.C.A.Const.Amend. 4.

8 Cases that cite this headnote

**Attorneys and Law Firms**

**\*71** John H. Cary, U. S. Atty., Knoxville, Tenn., John C. Cook, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff-appellant.

William H. Ortwein, Ortwein & Associates, Chattanooga, Tenn., for defendant-appellee.

Before EDWARDS, Chief Judge, CONTIE, Circuit Judge, and ENSLEN, District Judge. [*]

**Opinion**

CONTIE, Circuit Judge.

Pursuant to 18 U.S.C. s 3731, the government appeals the granting of defendant's motion to suppress evidence obtained during the course of an inspection of his pharmacy conducted in accordance with 21 U.S.C. s 880. Defendant, who operates his own pharmacy, was indicted on 46 counts of forging prescriptions required to be kept on record under the Controlled Substances Act and of obtaining Schedule II drugs by means of a forged prescription, both in violation of 21 U.S.C. s 843.

Title II of the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (The Controlled Substance Act), 21 U.S.C. ss 801-904, provides for government supervision of those engaged in manufacturing and distributing controlled drugs. The Act, which requires all who are so engaged to register with the U. S. Attorney General and to maintain certain records, imposes both civil and criminal penalties for its violation. It authorizes administrative inspections of pharmacies and drug manufacturers in order to check compliance with its provisions. The Act provides for the issuing of search warrants (s 879) and of administrative inspection warrants (s 880).

On three occasions prior to defendant's indictment, a Drug Enforcement Agency (DEA) inspector obtained an administrative inspection warrant and searched the premises of the defendant's pharmacy, each time removing prescriptions he suspected were forged or altered. Following his indictment, the defendant moved to suppress the evidence seized during the inspections on the grounds that the administrative warrants were issued on less than probable cause and therefore violated the fourth amendment. After a hearing, the trial court denied the motion as to the first administrative inspection and granted it as to the second and third. The Government now appeals the suppression of the fruits of the second administrative inspection.

I.

On June 5, 1980, two investigators for the Tennessee Board of Pharmacy inspected defendant's pharmacy and came to suspect that some of the prescriptions for Schedule II drugs found at the pharmacy were forged or altered. State investigators then contacted Anderson, a compliance inspector for the DEA. After state and federal inspectors met and discussed the matter, Anderson

Case 1:17-mj-00031-CHS   Document 1   Filed 03/03/17   Page 15 of 24   PageID #: 15

applied for and received an administrative inspection warrant on July 21, 1980, on the grounds that the pharmacy had never been inspected pursuant to the Act.

During inspection of the pharmacy from July 22 through July 25, Anderson seized approximately 233 prescriptions, of which 167 were ultimately found to be forged or altered. Anderson gave defendant the Miranda warnings at the beginning of the inspection and obtained a handwriting sample.

On August 5, Anderson filed a compliance investigation report with the DEA in which he recommended criminal prosecution of the defendant. His supervisor approved the report on October 3.

On August 21, 1980, Anderson applied for a second administrative inspection warrant. At this time, the DEA had not yet made a decision on the course of action to take and had not referred the case to the Department of Justice or U. S. Attorney, although Anderson had discussed the case with the U. S. Attorney. On the application for the warrant, Anderson stated that numerous *72 prescriptions seized during the earlier inspection were found to be forged or altered and that the defendant had ordered unusually large quantities of Schedule II drugs between the first inspection and August 21. He stated that the purpose of the inspection was to determine whether forged prescriptions for Schedule II drugs were still being filled and retained as records, and to conduct an accountability audit of these drugs.

During the second search, the defendant was again given Miranda warnings and another handwriting sample was taken. Twenty-seven Schedule II prescriptions were seized; nineteen were found to be forged.

In December 1980, the DEA contacted the U. S. Attorney's office with the results of the administrative inspections. On March 4, 1981, Anderson applied for and obtained a third administrative warrant. On April 6, 1981, the grand jury indicted Acklen.

[1] Upon considering the defendant's suppression motion, the district court found that the purpose of the first administrative inspection was to determine whether the pharmacy was complying with the record-keeping and regulatory requirements of the Act, but that the primary purpose of the second and third inspection was to uncover

evidence in support of a criminal investigation. The judge's rulings on the first and third searches have not been appealed. His finding of fact, as it applies to the second search, is not clearly erroneous.

## II.

The issue before us is whether evidence seized pursuant to an administrative inspection warrant obtained under 21 U.S.C. s 880 should be suppressed in a criminal trial for violations of the Controlled Substances Act if the primary purpose of the administrative inspection search was to obtain evidence for criminal prosecution.

[2] [3] The fourth amendment protects people against unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. Whether a particular governmental intrusion falls within the protection of the fourth amendment depends upon whether the defendant has a reasonable expectation of privacy in the area searched or property seized. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). If he did have such a reasonable expectation, then, absent exigent circumstances, the government may conduct a search only after obtaining a warrant upon a showing of probable cause. The test for probable cause is whether "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief" that certain items are the fruits, instrumentalities, or evidence of crime and that these items are presently to be found at a certain place. Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949).

[4] A warrant is also generally required to conduct an administrative inspection of a private or commercial establishment, such as to check enforcement of building, health, or safety codes. Marshall v. Barlow's Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). For purposes of an administrative search, however, "probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular (establishment).' " Id. at 320, 98 S.Ct. at 1824, citing Camara v. Municipal Court, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967).

In accordance with Supreme Court law, the Act itself provides:

> For the purposes of this section, the term "probable cause" means a valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections of the area, premises, building, or conveyance, or contents thereof, in the **\*73** circumstances specified in the application for the warrant.

21 U.S.C. s 880(d)(1).

In the instant case there is no dispute that the affidavit in support of the application for the second warrant provided probable cause for the issuance of an administrative inspection warrant. [1] The district court, held, however, that because the primary purpose of the search was to gather evidence of a crime, the fourth amendment mandated that the DEA apply for a criminal warrant with its higher standard for probable cause. [2]

In so ruling, the district court indirectly relied on Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), in which the Supreme Court discussed the need for a warrant in order for fire officials to enter burned-out premises to investigate the cause of a fire. The Supreme Court held that:

> (A)n entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to warrant procedures governing administrative searches. (Citations omitted.) Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution,

> they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. (Citations omitted.)

Id. at 511-12, 98 S.Ct. at 1950-51.

The holding in Tyler suggests that once evidence of a crime has been found, through the use of an administrative warrant or otherwise, further entry to gather evidence must be pursuant to a warrant obtained upon a traditional showing of probable cause.

Under the Tyler analysis, the finding of the district court that the primary purpose of the second search was to gather additional evidence of a crime would mean that the fourth amendment required the DEA to obtain a traditional warrant. See United States v. Lawson, 502 F.Supp. 158 (D.Md.1980), relied on by the district court.

This circuit, however, has declined to apply Michigan v. Tyler to administrative searches conducted pursuant to the Coal Mine Health and Safety Act. United States v. Consolidation Coal Co., 560 F.2d 214 (6th Cir. 1977), vacated and remanded, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978) (for further consideration in light of Marshall v. Barlow's Inc. and Michigan v. Tyler), judgment reinstated, 579 F.2d 1011 (6th Cir. 1978), cert. denied 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979). In Consolidation Coal, we held that the administrative standard of probable cause was enough to support a warrant under the Act **\*74** even though the mine inspection was intended to lead to a criminal prosecution. We found that the questioned searches "involved reasonable intrusions which were 'routine' in scope if not in motivation. Their regulatory character was not diminished by the fact that they were predicated upon overt criminal suspicion rather than on administrative necessity." Consolidation Coal at 218. We considered persuasive the fact that the criminal activity for which evidence was sought was activity declared criminal by the Act which authorized the inspection and that the "warrants themselves strictly limited the items which could be seized to those related to activities which would not have been engaged in by the Company but for the demands of the act." Id. at 220. We further stated:

> Where a search is routinely permissible on an administrative

basis, it would indeed be anomalous if we were to raise the threshold probable cause requirement when the government presents concrete evidence of irregular conduct by the mine operator.

Id. at 220.

We find the reasoning of Consolidation Coal applicable to the present case. We note that in both cases inspection searches were made pursuant to a regulatory statute that imposes both civil and criminal penalties for its violation. In such a situation, to make the validity of the administrative inspection wholly dependent upon the motivation of the inspector would be to create a rule extremely difficult to administer, since the same violations may lead to either criminal prosecution or the imposition of civil sanctions. The validity of the administrative warrant should depend not upon the motivation of the inspector but upon the scope of the search and the manner in which it is conducted. See In the Matter of Searches and Seizures Conducted on October 2, and 3, 1980, 665 F.2d 775 (7th Cir. 1981) (holding that, where a warrant is issued upon probable cause under 21 U.S.C. s 880, the motivation of the DEA investigator is immaterial to the validity of the search). To this effect, in a recent case analyzing the constitutionality of a warrantless search of mining records kept pursuant to 30 U.S.C. s 863, this court declined to "adopt a mode of analysis by which the constitutionality of the inspector's entrance into the mine office is to be judged by his purpose for entry," when he entered the mine during reasonable hours and inspected only records that were kept in part for governmental inspection. United States v. Blue Diamond Coal Co., 667 F.2d 510, 518 (6th Cir. 1981), petition for cert. filed 50 U.S.L.W. 3840 (April 7, 1982) (No. 81-1870).

We note that in United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court, determining the validity of an IRS summons issued to aid investigation of both civil tax liability and possible criminal fraud, distinguished between the motivation of the individual agent and the motivation of the IRS as an institution. The Court held that the IRS may issue a summons for such a dual purpose, regardless of the actual motives of the individual agent, as long as there has been no "institutional commitment" to criminal prosecution, i.e., as long as the matter has not been referred to the Justice Department. We need not

now determine whether this distinction should be applied to administrative inspection warrants issued by the DEA. For the Government has appealed only the suppression of the fruits of the second search, which was conducted before the DEA as an institution had committed itself to prosecuting Acklen. The Government has not appealed the suppression of the fruits of the third search, conducted after the DEA had referred the matter to the United States Attorney. [3]

III.

[5] [6] The conclusion of the Supreme Court in Tyler that the fourth amendment *75 required a warrant rested upon the finding that Tyler had a reasonable expectation of privacy in the burned-out premises. The question before us is whether Acklen had a similar reasonable expectation of privacy in his prescription files. We think not. For in Consolidation Coal we noted that the fact that the mining industry had a history of close federal regulation made it "reasonable to assume that mine operators have a reduced expectation of privacy in their business offices than less highly scrutinized enterprises." Consolidation Coal at 220. In United States v. Blue Diamond Coal Co., we recently reiterated that in the pervasively regulated mining industry the mine operator has a reduced expectation of privacy in items subject to administrative inspection. We now hold that the pharmaceutical industry, like the mining, firearms,[4] and liquor[5] industries, is a pervasively regulated industry and that consequently pharmacists and distributors subject to the Controlled Substances Act have a reduced expectation of privacy in the records kept in compliance with the Act.[6] See United States v. Jamieson-McKames Pharmaceuticals, Inc., 651 F.2d 532 (8th Cir. 1981), cert. denied, -- U.S. --, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982) (holding that pharmacist had no reasonable expectation of privacy in items subject to administrative inspection under the Food, Drug, & Cosmetic Act, 21 U.S.C. s 301 et seq.); United States v. Schiffman, 572 F.2d 1137 (5th Cir. 1978).

Consequently, we hold that the warrant issued August 21, 1980, was valid inasmuch as it was based on an administrative showing of probable cause under 21 U.S.C. s 880(d) and was conducted in accordance with the statute.

Case 1:17-mj-00031-CHS   Document 1   Filed 03/03/17   Page 18 of 24   PageID #: 18

We REVERSE and REMAND for further proceedings consistent with this opinion.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge, dissenting.
Respectfully I dissent. In Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), Justice Stewart's opinion for the court held:

> In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. See Camara, 387 U.S., at 534-539 (87 S.Ct., at 1733-1736); See v. Seattle, 387 U.S. (541), at 544-545 (87 S.Ct. 1737, at 1739-1740, 18 L.Ed.2d 943); Marshall v. Barlow's, Inc., ante (436 U.S.), at 320-321 (98 S.Ct., at 1824-1825). Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. United States v. Ventresca, 380 U.S. 102 (85 S.Ct. 741, 13 L.Ed.2d 684).

436 U.S. at 511-12, 98 S.Ct. at 1950-51. (Emphasis added).

Since I believe the facts in our instant case involved a situation where the Drug Enforcement Agency had "probable cause" that the crime had occurred and "require(d) further access to gather evidence for possible *76 prosecution," I would hold that a probable cause showing was required by the Fourth Amendment for the second search in this case.

For this reason and those ably presented by District Judge Wilson's opinion, I would affirm the judgment of the District Court.

**All Citations**

690 F.2d 70

Footnotes

*    The Honorable Richard A. Enslen, U. S. District Judge, Western District of Michigan, sitting by designation.

1    The Seventh Circuit, relying on cases decided in the other circuits considering the question, has recently held that "a warrant affidavit averring either that a pharmacy has never been inspected or that it has recently received an inordinately large supply of a controlled drug is sufficient to establish probable cause to issue an administrative search warrant." Matter of Searches & Seizures Conducted on October 2, and 3, 1980, 665 F.2d 775, 777 (7th Cir. 1981).

2    Appellants propose that the affidavit supporting the application for the administrative inspection warrant actually met the more stringent requirements of traditional probable cause and that consequently any error on the part of the DEA agent was harmless. We decline to consider whether the affidavit established probable cause for a criminal search warrant; for the purpose of the warrant requirement is not to have a reviewing court determine in retrospect whether probable cause existed but to interpose between the citizen and the police "the deliberate, impartial judgment of a judicial officer." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), quoting Wong Sun v. United States, 371 U.S. 471, 481, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963). In the present case, the magistrate did not consider whether the DEA had established probable cause for a criminal warrant. If a criminal search warrant was required in the instant case, the defendant was denied his constitutional right to have a neutral magistrate determine the existence of probable cause before the search was conducted.

3    We note, however, that were the matter squarely before us, LaSalle would not be controlling; for LaSalle was decided on the basis of the congressional intent behind 26 U.S.C. s 7602, not upon consideration of the fourth amendment.

4    See United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).

5     See Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

6     In upholding the warrantless search provisions of the Mine Safety and Health Act, the Supreme Court recently distinguished between pervasively regulated businesses and other businesses in terms of the owners' expectations of privacy. In the former, "the federal regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." In the latter, the owner "may have little real expectation that his business will be subject to inspection." Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981).

---

**End of Document**                                                     © 2017 Thomson Reuters. No claim to original U.S. Government Works.

663 F.2d 30
United States Court of Appeals,
Sixth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Herbert W. VOORHIES,
M.D., Defendant-Appellant.

No. 80-5077.
|
Argued June 5, 1981.
|
Decided Nov. 2, 1981.

Defendant, a physician, was convicted in the United States District Court, Middle District of Tennessee, Thomas A. Wiseman, Jr., J., of unlawfully distributing controlled substances, and he appealed. The Court of Appeals, George Clifton Edwards, Jr., Chief Judge, held that: (1) warrant authorizing search and seizure of physician's patient medication cards based on Government's representation in application for warrant that premises to be searched had never before been inspected was valid, and (2) requirements of Comprehensive Drug Abuse Prevention and Control Act of 1970 were meant by Congress to apply to medical practitioner who packs or holds controlled substances and dispenses them to ultimate users; regulation of dispensation of narcotics by person in medical practice is part of comprehensive scheme set forth in the Act.

Affirmed.

West Headnotes (3)

[1]     **Controlled Substances**
        ⌦ Persons Liable
        Requirements of Comprehensive Drug Abuse Prevention and Control Act of 1970 were meant by Congress to apply to medical practitioner who packs or holds controlled substances and dispenses them to ultimate users; regulation of dispensation of narcotics by persons in medical practice is part of comprehensive scheme set forth in the Act.

Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 102(20), 307, 510(b)(1), (d)(1), 21 U.S.C.A. §§ 802(20), 827, 880(b)(1), (d)(1).

2 Cases that cite this headnote

[2]     **Controlled Substances**
        ⌦ Issuance, Requisites, and Validity of Warrant in General
        Warrant authorizing search and seizure of physician's patient medication cards based on Government's representation in application for warrant that premises to be searched had never before been inspected was valid. Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 102(20), 307, 510(b)(1), (d)(1), 21 U.S.C.A. §§ 802(20), 827, 880(b)(1), (d)(1); U.S.C.A.Const.Amend. 4.

3 Cases that cite this headnote

[3]     **Federal Civil Procedure**
        ⌦ Particular Issues and Cases
        In prosecution of physician for unlawfully distributing controlled substances, trial court's charge, taken as whole, was calculated to protect physician who made good-faith effort to comply with law. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(a)(1), 21 U.S.C.A. § 841(a)(1).

3 Cases that cite this headnote

**Attorneys and Law Firms**

**\*31**  Richardson R. Lynn, Agoura, Cal., Jack Ritter, Los Angeles, Cal., for defendant-appellant.

Hal D. Hardin, U. S. Atty., Margaret M. Huff, Nashville, Tenn., for plaintiff-appellee.

Before EDWARDS, Chief Judge, and WEICK and MERRITT, Circuit Judges.

## Opinion

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

Defendant Voorhies, a doctor practicing in Nashville, Tennessee, appeals from a conviction after jury trial for unlawfully distributing controlled substances, in violation of 21 U.S.C. s 841(a)(1) (1976). The jury found defendant guilty on 49 counts of illegal distribution of amphetamines, amphetamine-like drugs and various other controlled substances based on evidence which we find supports their verdict.

Appellant presents only two issues of arguable merit. He first contends that the search warrant under which hundreds of his patient medication cards were seized by microfilming was invalid because the application for the search warrant relied upon the following statement by a compliance investigator for the Drug Enforcement Administration: "The establishment has not been previously inspected pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970."

The applicable statutory provision authorizing the Attorney General to conduct administrative inspections under the Comprehensive Drug Abuse Prevention and Control Act is 21 U.S.C. s 880(b)(1) (1976), which provides as follows:

> For the purpose of inspecting, copying, and verifying the correctness of records, reports, or other documents required to be kept or made under this subchapter and otherwise facilitating the carrying out of his functions under this subchapter, the Attorney General is authorized, in accordance with this section to enter controlled premises and to conduct administrative inspections thereof, and of the things specified in this section, relevant *32 to those functions. 21 U.S.C. s 880(b)(1).

Probable cause for issuance of an administrative search warrant is defined in 21 U.S.C. s 880(d)(1) (1976) as follows:

> (T)he term "probable cause" means a valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections of the area, premises, building, or conveyance, or contents thereof, in the circumstances specified in the application for the warrant. 21 U.S.C. s 880(d)(1).

[1] The statutory scheme of which the above two paragraphs are a part contemplates careful regulation and control of potentially harmful drugs and 21 U.S.C. s 827 requires the keeping of records which must be made available for inspection. Careful inspection of the applicable statute shows clearly that the requirements of the statute were meant by Congress to apply to a medical "practitioner," (see 21 U.S.C. s 802(20)) who packs or holds controlled substances and dispenses them to ultimate users. (Sec. 21 U.S.C. ss 802(10) and 822.) It therefore appears that the regulation of dispensation of narcotics by persons in medical practice [1] is a part of the comprehensive scheme set forth in the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. s 801 et seq.

In the case at hand, the application for the administrative search warrant stated:

> Larry W. Lockhart, a duly authorized Compliance Investigator of the Drug Enforcement Administration, Department of Justice, Nashville, Tennessee, hereby applies for an inspection warrant, pursuant to Section 510 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P.L. 91-513), (Title 21, United States Code, Section 880), for the inspection of the establishment as follows:

Herbert W. Voorhies, M.D.

2412 12th Avenue South

Nashville, Tennessee 37204

> 1. Drugs or other substances included in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P.L. 91-513) (Title 21, United States Code, Section 811) are packed or held in this establishment.

2. The establishment has not been previously inspected pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970.

3. This is an inspection undertaken as a part of a statutorily authorized inspection program designed to assure compliance with the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P.L. 91-513).

4. The inspection will be conducted within regular business hours. The compliance investigator's credentials will be presented to the registrant as prescribed in Section 510 of the Act. The inspection will begin as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

5. The inspection will extend to the establishment and all pertinent equipment, finished and unfinished materials, containers and labeling therein, and all books and records required to be maintained by law.

6. Samples and/or records will be seized when necessary to a reasonable *33 inspection and receipt will be given therefor.

7. The compliance investigator named hereinbefore may be accompanied by one or more compliance investigators also duly authorized by the Drug Enforcement Administration, Department of Justice and/or investigators from the Tennessee Department of Public Health, Health Related Boards.

8. A return will be made to the Court at the completion of the inspection.

9. The authority for the issuance of the inspection warrant is Section 510 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P.L. 91-513), Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) and Colonnade Catering Corporation v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

    Sworn to and subscribed by
s/ Larry W. Lockhart

LARRY W. LOCKHART

Drug Enforcement Administration

[2]  We believe the government's representation in the application for the warrant that the premises to be searched had never before been inspected constituted a "valid public interest" justifying issuance of an administrative search warrant, and, together with the statement of congressional findings and purposes in the act served to satisfy the requirements of the Fourth Amendment under the facts of this case. United States v. Prendergast, 585 F.2d 69 (3d Cir. 1978); United States v. Goldfine, 538 F.2d 815 (9th Cir. 1976). While we note appellant's argument that this court should reject Prendergast and Goldfine and adopt a rule requiring "a showing of suspicious activity" before the Magistrate who issued the administrative search warrant, we do not find such a requirement either in the legislative history, or in any of the Supreme Court cases arguably relevant here. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and Colonnade Catering Corporation v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), both of which upheld warrantless inspections authorized by comprehensive acts. See also Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1977) and Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981).

[3]  Appellant's second contention is that the District Judge's charge failed to separately describe two elements of the crime and failed to tell the jury that in the absence of proof of both, the defendant must be acquitted. As to the District Court's charge, we find no error requiring reversal of this case. The paragraphs objected to are as follows:

The essential elements of the offense charged in Count One are as follows: ...

4. That the substances dispensed by the defendant were so dispensed for other than a legitimate medical purpose in the usual course of professional practice.

Unless you find beyond a reasonable doubt that an act of dispensation charged in the indictment against a physician defendant was not done by the defendant physician in the usual course of his professional practice, then you should find him not guilty.

The language chosen in the first paragraph above by the District Judge is drawn directly from 21 C.F.R. s 1306.04(a) which says as follows:

A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice....

The District Judge's charge, however, did not stop there. On the contrary, we believe that taken as a whole, it was calculated to protect any physician who made a good faith effort to comply with the law. For example, the District Judge specifically instructed the jury as follows:

A controlled substance is dispensed by a physician in the usual course of his professional practice, and therefore lawfully, if the substance is dispensed by him in good faith in medically treating a patient.

**\*34** Good faith in this context means good intentions and honest exercise of best professional judgment as to a patient's medical needs. It connotes an observance of conduct in accordance with what the physician should reasonably believe to be proper medical practice.

This case was well prepared and well tried. We would find it hard to fault the jury for finding a defendant guilty who prescribed amphetamines for a patient who came in to ask for "black widows" in order to party with her friends.

The judgment of conviction is affirmed.

**All Citations**

663 F.2d 30

### Footnotes

1   This case does not involve forcible seizure of the patient records of a normal medical practice. At the time involved, Dr. Voorhies was practicing three weeks out of each month in California and one week in Nashville, Tennessee. The evidence in the case indicates that 80% of his Nashville patients were "weight reduction" patients. The testimony at the trial provided evidence from which the jury could have concluded that he was much more specifically in the business of selling drugs than engaging in the profession of medicine. The patient records which were "seized" (microfilmed) were identified by the defendant as the only record he kept concerning dispensation as required by the terms of the Comprehensive Drug Abuse Prevention and Control Act of 1970. While the agent stated that he had a search warrant, the defendant did not refuse to allow microfilming. Thus, no decision was made concerning forcible seizure or alternatively another application for a regular search warrant based upon probable cause. See Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946).

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:17-mj-00031-CHS   Document 1   Filed 03/03/17   Page 24 of 24   PageID #: 24